## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL BROWN, #R-65831, )
 )
    Plaintiff, )
 )
vs. )  Case No. 16-cv-00276-MJR
 )
VIPIN SHAH, )
SHIRLEY, COWSKI, and )
LASHBROOK, )
 )
    Defendants. )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

   Plaintiff Michael Brown, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 10). Plaintiff makes a number of claims under the Eighth Amendment all stemming from an incident of excessive force by prison guards. Additionally, he alleges a violation of his Fourteenth Amendment rights for the defendants' non-response to his grievances. In connection with these claims, Plaintiff sues Vipin Shah (doctor), Shirley (lieutenant), Cowski (lieutenant), and Jacqueline Lashbrook (Pinckneyville warden) for monetary damages and injunctive relief.

   This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b). The Court is reviewing the First Amended

Complaint because the original complaint was dismissed without prejudice for incompleteness (Docs. 1, 9, 10).

## The Complaint

Brown alleges that on August 25, 2015, he was attacked by a fellow inmate at Pinckneyville. Defendants Shirley and Cowski responded to the fight in Brown's housing unit and immediately detained him by tightly handcuffing his hands behind his back. He alleges that Shirley and Cowski should not have used such force to restrain him because he was obviously suffering from a severe asthma attack and could be observed gasping for breath and sweating profusely (*Id.*). Despite his pleas to have a minute to catch his breath or to be cuffed in front of his body, the Defendants persisted and forced him to walk more than 500 yards to the medical unit (*Id.*). On the walk Defendants told him to "shut up" and they continued forcing his arms upwards in painful positions (*Id.*).

Brown filed grievances about Shirley and Cowski's conduct, but received no responses (*Id.* at 6). When he inquired about the grievances, he was told they were not received, so he submitted more grievances (*Id.*). Brown also sought medical care for his shoulder injuries as a result of the handcuffing, but Defendant Shah denied care. Shah simply told him to "lose more weight and drink more water" (*Id.*). Brown followed up on his efforts to get medical care by filing grievances about that as well (*Id.*). He alleges that he received no response to those grievances and that the non-response constituted an effort to impeded his ability to litigate (*Id.*). As a whole, Brown alleges that the Defendants' conduct constituted deliberate indifference. He claims that he suffered rotator cuff injuries to both shoulders, severe headaches and depression, and other unspecified mental injuries (*Id.*).

**Discussion**

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:**   Eighth Amendment claim against Defendants Shirley and Cowski for use of excessive force by handcuffing Brown and transporting him to the medical unit in an aggressive fashion;

**Count 2:**   Eighth Amendment deliberate indifference to a serious medical condition claim against Defendant Shah for failing to treat Brown's shoulder injuries that resulted from the handcuffing incident;

**Count 3:**   Eighth and Fourteenth Amendment claim against Defendant Lashbrook for deliberately failing to respond to Brown's grievances; and,

**Count 4:**   Denial of access to the courts claim against Defendant Lashbrook for failing to respond to Brown's grievances

All counts shall be dismissed for failure to state a claim upon which relief may be granted. All Defendants shall be dismissed.

**Count 1**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34, 38-40 (2010); *DeWalt v. Carter,* 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force

need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

"Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009). For example, force may be excessive if a guard issues a directive and applies force without giving the inmate any time to comply with the directive. *Id.* at 478. However, force is not inherently severe or excessive simply because officers choose to use handcuffs or use some degree of force to move a disobedient inmate from one location to another. *See Fillmore v. Page*, 358 F.3d 496, 504-05 (7th Cir. 2004) (noting that incidental bumping and roughness that occurred when guards encountered and moved an inmate from his cell after he had thrown hot oil at other guards was not excessive force).

Here, Brown has failed to state a sufficient factual basis to proceed with his excessive force claim against Defendants Shirley and Cowing. At most, he alleges that the officers used handcuffs in a fashion that was too aggressive. He alleges that the use of handcuffs tore his rotator cuffs, but he has not supplied medical evidence of this and he does not complain of any ongoing pain, which detracts from the notion that he suffered a serious injury. Weighing his claim that the use of handcuffs was too aggressive against the other facts presented, his claim does not amount to deliberate indifference. The officers came to his housing unit in response to a physical altercation between him and another inmate—meaning that the guards were likely on

high alert. Officers may use some degree of force to restore discipline. Moreover, Brown does not allege that he was handcuffed for an unreasonably long period of time, that there was no justification whatsoever for cuffing him, or that he was kept from medical care by being cuffed.

In fact, the handcuffs were briefly placed on him as he was transported to the medical unit. Though he ultimately alleges that Dr. Shah did not provide sufficient medical care, that allegation has no bearing on the propriety of using the cuffs. Furthermore, Brown does not argue that the officers should not have cuffed him altogether, and he even states in his complaint that he offered to be cuffed in front of his body. Considering all of the facts together, Brown has failed to state a viable claim against Shirley and Cowing for their brief use of handcuffs to restore discipline. Accordingly, Count 1 will be dismissed with prejudice against Defendants Shirley and Cowing.

## **Count 2**

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference standard is satisfied if the plaintiff shows

that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 842, 847 (1994).

At this early stage, the Complaint suggests that Brown suffered from shoulder pain as a result of the handcuffs placed on him by Defendants Shirley and Cowski. He alleges that he has two "total" rotator cuff injuries. According to the Complaint, every request Brown made for medical care for his shoulder pain was met by refusal. Apparently Shah told him to drink water and lose weight. Chronic shoulder pain could be a serious condition under the objective prong of the deliberate indifference test because it could result in prolonged discomfort.

As to the subjective prong of the deliberate indifference test, Plaintiff has failed to show that Shah acted with deliberate indifference to his serious medical need. Though Brown alleges that he sought and was denied medical care for his shoulder pain, the medical records he appended to his complaint reflect no note of shoulder injury. The medical notes do reflect that he asked for the handcuffs to be removed due to his asthmatic condition, but the records do not denote shoulder pain. Furthermore, Plaintiff's final grievance, to the Administrative Review Board, makes no mention of untreated shoulder pain, and it instead just focuses on how the handcuffs caused belabored breathing and how he did not get responses to his internal grievances at Pinckneyville. Notably, none of the grievances appended mention any shoulder pain or lack of medical care, instead just focusing on the propriety of handcuffs during an asthma attack.

The Seventh Circuit has held that if the exhibits to a complaint directly contradict the complaint, the exhibits should be favored. *See Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedent."). Here, the exhibits do not directly contradict the Complaint, but they certainly weigh against the notion that

Brown was denied medical care or suffered a shoulder injury. Moreover, the exhibits provide no factual support for the assertion that Shah was aware of Brown's shoulder pain and refused care. The records show that Shah addressed Brown's asthma condition, but there is no mention of an injured shoulder.

Plaintiff's bald assertion that Shah denied him treatment without any supporting facts such as, specifically when treatment was sought, how often it was sought, or what the tenor of the denial was, is simply not enough to state a claim for deliberate indifference against Shah. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1955) (stating that a plaintiff must provide "more than labels and conclusions" or a "formulaic recitation of the elements"). The documents appended to the Complaint do not suggest that Shah was aware of a shoulder injury and the lack of other supporting facts makes this claim too speculative, even at the screening phase, to proceed. Therefore, Count 2 is dismissed without prejudice as to Defendant Shah—the only Defendant named in connection with denied medical care.

## Count 3

The Complaint refers to the Eighth and Fourteenth Amendments in connection with conduct by Defendant Lashbrook—essentially alleging that Lashbrook's non-response to Brown's grievances constituted deliberate indifference to his medical needs. To the extent that Count 3 arises from Defendant Lashbrook's failure to respond to Brown's grievances, it is subject to dismissal. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). The failure to address grievances does not give rise to a free-standing constitutional claim in the deliberate indifference context, though, as

the Seventh Circuit recently noted, non-response or inaction could be important evidence in a deliberate indifference to serious medical needs claim. *See Daniel v. Cook Cnty. et al.,* No. 15-2832, slip op. at 14-15 (7th Cir. Aug. 15, 2016) ("[D]elays in responses to Daniel's grievances do not support an independent constitutional claim, but those delays may support Daniel's other evidence that systemic problems at the Jail caused him to suffer injury as a result of official indifference. The evidence that such delays occurred further bolsters Daniel's general claim of inadequate treatment."). The *Daniel* Court's rationale suggests that delays or non-responses to grievances could, though not posing a free-standing claim, support Brown's overall theory of deliberate indifference to his medical needs.

Despite *Daniel*, Brown is unable to make a claim for deliberate indifference to a medical need by Defendant Lashbrook because his grievances to her do not give her notice that he was being denied medical care. The grievances appended to his complaint reflect his excessive force concerns, but none of the grievances specifically mention a shoulder injury and a subsequent lack of treatment. Thus, the non-response to these grievances cannot support a grander theory of deliberate indifference to medical needs by Lashbrook. There is no evidence that Lashbrook was specifically made aware of his shoulder injury and denied to take action to verify that he received sufficient medical care. Accordingly, Count 3 will be dismissed with prejudice as to Defendant Lashbrook for failure to state any claim upon which relief may be granted.

## Count 4

Brown also makes a very bare bones claim that Lashbrook's conduct denied him access to "litigation." Again, the denial of grievances does not constitute a freestanding claim under the Fourteenth Amendment. *See Daniel,* No. 15-2832, slip op. at 14-15. The facts presented by Brown also do not support a traditional access to courts claim because he does not explain how a

non-response to grievances prevented him from litigating his medical needs, and the fact that he successfully composed and filed his complaint suggests otherwise. To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted). This requires a plaintiff to identify the underlying claim that was lost and the remedy now sought in replacement of that loss. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007). Brown has not demonstrated that delays in the grievance system, or Lashbrook's role in that system, caused him to lose a legal claim. Accordingly, Count 4 will be dismissed with prejudice for failure to state a claim.

## Pending Motions

Plaintiff's Motions for Recruitment of Counsel (Docs. 3, 11) and his Motions for Service of Process at Government Expense (Doc. 4, 13) are hereby **DENIED as moot** because his entire action is being dismissed at this juncture.

Plaintiff's second Motion to Proceed *in forma pauperis* (Doc. 12) is also **DENIED** as moot because the Court granted his original Motion to Proceed *in forma pauperis* (Docs. 2, 8).

## Disposition

**IT IS ORDERED** that **COUNT 1** is **DISMISSED** with prejudice against **Defendants SHIRLEY and COWSKI** for failure to state a claim upon which relief may be granted. **COUNT 2 is DISMISSED** in its entirety without prejudice against **Defendant SHAH** for failure to state a claim upon which relief may be granted. **COUNTS 3 and 4** are also **DISMISSED** in their entirety with prejudice against **Defendant LASHBROOK** for failure to state a claim upon which relief may be granted.

Because Brown's Amended Complaint still fails to state a claim upon which relief may be granted, this Court will now assess a <u>strike</u> for the dismissal of the Amended Complaint, pursuant to § 1915A(b)(1). *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011) (noting that a "dismissal is a dismissal, and provided that it is on one of the grounds specified in [§] 1915(g) it counts as a strike, . . ., whether or not it's with prejudice.").

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

## <u>Notice</u>

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal within 30 days from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion must be filed within twenty-eight (28) days of the entry of judgment, and the deadline cannot be

extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to

proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  September 22, 2016**

**s/ MICHAEL J. REAGAN**
**U.S. District Judge**